**In re GRANADA, INC., Debtor.**

**Peter W. BILLINGS, Jr., Trustee for Granada, Inc., Plaintiff,**

v.

**KEY BANK OF UTAH, a Utah corporation, dba Commercial Security Bank, Commercial Security Bank of Utah, a Utah corporation, and Commercial Security Key Bank, a Utah corporation, Defendant.**

**Bankruptcy No. 87C–00693.**
**Adv. No. 89PC–0420.**

United States Bankruptcy Court,
D. Utah.

May 25, 1990.

Robert P. Rees, Fabian & Clendenin, Salt Lake City, Utah, for trustee.

Carolyn Montgomery, William R. Richards, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for Key Bank of Utah.

## MEMORANDUM OPINION AND ORDER

GLEN E. CLARK, Chief Judge.

The matter presently before the court is an avoidance action that was commenced by the appointed Chapter 11 trustee, Peter W. Billings, Jr. ("trustee"). The trial of the above-entitled adversary proceeding began on February 14, 1990. Robert P. Rees appeared on behalf of the trustee. Carolyn Montgomery and William R. Richards appeared on behalf of the defendants, Key Bank of Utah, d/b/a Commercial Security

Bank, Commercial Security Bank of Utah, and Commercial Security Key Bank ("defendants"). Counsel presented evidence and argument, after which the court took the matter under advisement. The court has carefully considered and reviewed the evidence presented, the arguments of counsel, and the memoranda submitted by the parties, and has made an independent review of the authorities. Now being fully advised, the court renders ·the following decision.

## FACTS

On February 13, 1987, Granada, Inc. ("Granada") filed a petition for relief under Chapter 11 of the Bankruptcy Code. On June 22, 1987, the court appointed the trustee. On June 20, 1989, the trustee filed a complaint in this court instituting the present adversary proceeding against the defendants claiming that certain payments that Granada made to them are avoidable as preferential and/or fraudulent transfers under 11 U.S.C. §§ 547(b) and 548(a)[1] and that the value of those transfers is recoverable by him under § 550(a). The defendants deny that the transfers are preferential and that they are parties from whom recovery can be sought under § 550(a).[2]

### a) *The Parties and the Debt in Question*

In its heyday, Granada held an interest in at least eighty different entities. (Transcript 2 at 46.) Relevant to this case are Granada's general partnership interests in Ashley Creek, Ltd. ("Ashley") and Suntrail Enterprises ("Suntrail"), both of which are Utah limited partnerships, and Westwood Partners ("Westwood"), a Utah general partnership ("the partnerships").

Between 1982 and 1984, Commercial Security Bank ("CSB") made a loan to each of the partnerships. All of the loans were secured by property owned by each of the respective partnerships and were guaranteed by C. Dean Larsen ("Larsen") who was the president of Granada at that time.

Key Bank of Utah is the successor-in-interest to CSB.

### b) *Granada's Method of Operation and the Transfers in Question*

While in operation, Granada maintained a general interoffice account consisting of its monies and monies that it had "upstreamed" from the bank accounts of the partnerships in which it held an interest. (Plaintiff's Exhibit 18; Transcript 1 at 15; Transcript 2 at 13.) Specifically, if there were excess funds in a particular partnership account, Granada would draw a check on the account, leaving it with a small balance, and then deposit the withdrawn funds into its interoffice account. (Transcript 1 at 15; Transcript 2 at 12.) This upstreaming of funds was recorded on the books of Granada and the respective partnership as an increase in Granada's debt to the partnership, or a decrease in the partnership's debt to Granada. (Transcript 1 at 16; Transcript 2 at 12.)

Granada used the monies in its interoffice account to pay its own creditors or to make disbursements to the partnerships so as to enable them to pay their creditors. Generally, its cash management philosophy can be summarized by the phrase "all for one, and one for all." This is supported by the fact that after it had collected monies from the partnerships' accounts and had deposited them into its interoffice account, Granada would redistribute the funds to whichever entities had debts due. (Transcript 1 at 15, 17; Transcript 2 at 12–15.) Thus, when a partnership was required to pay a creditor, Granada would issue a check to the partnership from its interoffice account which check would then be deposited into the partnership's checking account so that the partnership's subsequent check to the creditor would clear. (Transcript 1 at 15, 17; Transcript 2 at 14–15, 33–35.) This "downstreaming" of funds was recorded on the books of Granada and the respective partnership as a de-

---

1. Unless otherwise stated, all future references to statutory sections are to Title 11 of the United States Code.

2. The trustee's 11 U.S.C. § 548 claims were not addressed at trial.

crease in Granada's debt to the partnership, or an increase in the partnership's debt to Granada. (Transcript 2 at 12.) The downstreaming of funds to the partnerships did not follow any particular pattern, but rather, was based on their immediate needs. (Transcript 1 at 15; Transcript 2 at 12.) The court accepts the testimony of LaMar Hatch, Granada's comptroller who oversaw the accounting of Granada and the partnerships from 1984 until 1987, that the monies from the interoffice account were downstreamed to the partnerships only to cover their operating expenses. (Transcript 1 at 5, 15, 17.) Granada's debts to the partnerships, and the partnerships' debts to Granada, were not reduced to notes and repayment schedules were never generated. (Transcript 1 at 16–17; Transcript 2 at 13.)

It was the partnerships' practice to draft checks to CSB from their respective accounts that would in turn create a negative account balance on their books. (Plaintiff's Exhibit 1–16.) Accordingly, the partnerships would generally hold the checks that had been drafted for a number of days until they had received a downstream transfer from Granada's interoffice account sufficient to cover the full amount of the deficiency. (*Id.*) The parties have stipulated that during the prepetition year the following funds from Granada's interoffice account were downstreamed to the partnerships' accounts:

| Date | Partnership | Deposit |
|------|-------------|---------|
| 2/18/86 | Ashley | $27,000.00 [3] |
| 5/16/86 | Ashley | $21,000.00 |
| 5/20/86 | Suntrail | $ 7,745.00 |
| 5/20/86 | Westwood [4] | $ 4,240.00 |
| 6/25/86 | Ashley | $12,000.00 |
| 8/6/86 | Suntrail | $ 2,800.00 |
| 9/8/86 | Westwood | $ 5,100.00 |
| 9/8/86 | Suntrail | $ 2,300.00 |
| 12/23/86 | Suntrail | $ 1,900.00 |

(Pre-trial Order at 3–4) (Plaintiff's Exhibits 1–8.) Their accounts being replenished, the partnerships then made the following corresponding payments to CSB for application to the loans in question:

| Date | Partnership | Check to CSB |
|------|-------------|--------------|
| 2/18/86 | Ashley | $37,948.97 |
| 6/6/86 | Ashley | $24,959.00 |
| 5/22/86 | Suntrail | $ 3,045.67 |
| 5/22/86 | Westwood | $ 4,234.49 |
| 6/30/86 | Ashley | $11,489.00 |
| 8/7/86 | Suntrail | $ 877.40 |
| 9/8/86 | Westwood | $ 5,069.83 |
| 9/8/86 | Suntrail | $ 2,301.29 |
| 12/23/86 | Suntrail | $ 1,761.00 |

(Pre-trial Order at 4) (Plaintiff's Exhibits 1–16; Transcript 2 at 19–26; 33–35.) Upon a review of the corresponding deposits and disbursements from Granada to the partnerships and then from the partnerships to CSB, the court concludes that Granada transferred the monies to the partnerships to insure that their accounts would not be overdrawn when they made their payments on the CSB loans.[5]

---

**3.** With the exception of the amount of this particular downstream transfer and the following May 16, 1986 transfer, the court has derived all of the dates and the amounts of the transfers listed herein from the pre-trial order because it has determined that those dates and numbers are supported by the evidence. (Plaintiff's Exhibits 1–8.) The court has deviated from the pre-trial order only in the case of these two transfers because it states that the amount of funds which were downstreamed by Granada to Ashley was "$27,200.00" and "$21,100.00." (Pre-trial Order at 3.) Copies of the checks that were submitted into evidence, however, are for the amounts stated in the opinion. (Plaintiff's Exhibits 1A, 2A.) The court notes that although evidence was not submitted to support the transfer that took place on December 23, 1986, that transfer was stipulated to by the parties and was made within the ninety-day preference period. (Pre-trial Order at 3–4.)

**4.** The transfers to Westwood were accomplished by a proceeding transfer by Granada to West-

wood Hills, Ltd., a Utah limited partnership, of which Granada was a general partner, followed by a check on the same day, in the same amount, from Westwood Hills, Ltd. to Westwood. (Plaintiff's Exhibits 4–5, 12–13.)

**5.** The testimony of Kerry Francis, a certified public accountant who has been retained by the trustee and who has spent considerable time on the Granada case, is particularly compelling. The trustee's examination reveals:

Q. And in each case, have you formed an opinion as to whether the check to CSB would have cleared without the deposit shown?

A. Yes, I have, and the check from the entity, the partnership to CSB would not have cleared unless the deposits that I reflected on each of the schedules had been made into [the partnerships'] bank account. . . .

Q. And have you formed an opinion in each of these cases as to the source of the funds to pay CSB?

The testimony elicited and the evidence received also shows that Granada controlled the bank accounts of the partnerships in which it held an interest. In particular, the partnerships' checkbooks were kept at Granada's place of business. All of the checks that were generated by the partnerships to CSB had Granada's address printed on them and were signed by its employees. (Plaintiff's Exhibits 1–8, 22; Transcript 1 at 6; Transcript 2 at 15–16.) Moreover, the partnerships' bank statements were sent to Granada's place of business, and its employees prepared the partnerships' financial reports, and maintained their checking account records and general ledgers. (Transcript 1 at 6–7, 10, 17–18; Transcript 2 at 15.)

On the basis of these facts, the trustee argues that the downstream transfers that Granada made to the partnerships during the prepetition year are avoidable as preferential transfers under § 547(b). He maintains that because the partnerships and Larsen, the guarantor of the CSB loans, are insiders, the one year reach-back provision of § 547(b)(4)(B) should apply. As avoidable transfers, the trustee contends that under § 550(a) he may recover the property that was transferred for the benefit of the estate from the defendants as transferees under that section.

## DISCUSSION

■ In *Lowrey v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.)*, 97 B.R. 77 (W.D.Okla.1988), *aff'd*, 892 F.2d 850 (10th Cir.1989), the Tenth Circuit affirmed the judgment of the district court and adopted its opinion holding that the trustee could apply the one year preference period applicable to insiders to avoid transfers that were made by the debtor to a non-insider lender because the transfers benefited an insider-creditor of the debtor. The court in *Robinson Bros. Drilling* went on to hold that the trustee could recover the funds transferred by the debtor from either the non-insider lender or the insider-creditor because under § 550(a)(1) an avoided transfer may be recovered by the trustee for the benefit of the estate from "the initial transferee of such transfer or the entity for whose benefit such transfer was made...." See also *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir. 1989).

Recently, in *Billings v. Zions First Nat'l Bank (In re Granada, Inc.)*, 110 B.R. 548 (Bankr.Utah 1990) ("*Granada I*"), this court held that the reasoning in *Robinson Bros. Drilling* could be extended to apply to transfers that, while different than those addressed by the Tenth Circuit in that case, have the same effect. The trustee in *Granada I* claimed that within one year of filing bankruptcy Granada had transferred funds to a limited partnership in which it was a general partner, to enable the limited partnership to make loan payments to the defendant-bank on a loan that the bank had made to the limited partnership.[6] Based on the facts alleged by the trustee, the court concluded that the insider-limited partnership could be found to be a creditor of the estate and, therefore, the one year reach-back provision of § 547(b)(4)(B) could be applied to avoid the alleged transfers in question. Because it was plausible that an avoidable preference existed, the court refused to dismiss the relevant paragraphs of the trustee's complaint, stating that under the holding in *Robinson Bros. Drilling* the trustee could seek recovery from the outsider-defendant-bank provided that, *inter alia*,[7] he could

---

A. Yes. It is the money which came from the Granada interoffice account.... (Transcript 2 at 25.)

**6.** *Compare Lowrey v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.)*, 97 B.R. 77 (W.D. Okla.1988), *aff'd*, 892 F.2d 850 (10th Cir.1989) (debtor made transfers within the prepetition year to various non-insider lenders for application to a loan that the lender had made directly to the debtor. The insider was involved in the case only by virtue of the fact that he had guaranteed the debtor-lender loan).

**7.** In *Granada I*, 110 B.R. 548, 552 (Bankr.Utah 1990), the court was faced with the additional issue of the effect of a release signed by the parties. A release of claims is not an issue in this proceeding.

prove that the bank was a transferee under § 550(a). *Id.* at 552–53; *accord C–L Cartage Co.*, 889 F.2d 1490 (transfers made during the prepetition year by the president of the debtor to the debtor, by the debtor to the insider-creditor, and then from the insider-creditor to the non-insider bank for application to a loan that the bank had made to the president were held to be avoidable preferences under § 547(b). The court remanded the case for a determination of liability under § 550(a)(2)).

The transfers in this case are identical to those alleged by the trustee in *Granada I.* Namely, the trustee in this proceeding seeks to avoid several transfers that Granada made within one year of filing bankruptcy to the partnerships, of which Granada was a general partner, that enabled the partnerships to make loan payments to CSB on loans that CSB had made to each of the respective partnerships. Accordingly, on the basis of its holding in *Granada I,* the court concludes that the Tenth Circuit's holding in *Robinson Bros. Drilling* applies to the transfers in this case and, therefore, upon proving that the transfers are avoidable preferences, the trustee can seek recovery from any transferee that qualifies as such under § 550(a).

Upon a review of the evidence, the court concludes that the trustee has met his burden under § 547(g) of proving that the transfers that Granada made to the partnerships are avoidable as preferences under § 547(b).[8] In support of this conclusion, the court first notes that for purposes of § 547(b) the parties have not argued that Granada's interoffice account is not property of the estate. The checks issued by Granada from that account are therefore "transfer[s] of an interest of the debtor ..." under § 547(b). The remaining elements of that section require more attention.

In determining that the transfers in question are preferences, the court focuses its attention on Larsen, the guarantor of the partnership–CSB loans, as the insider-creditor who benefited from the transfers that Granada made to the partnerships.[9] Subsection (1) of § 547(b) requires that the transfers be made "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Larsen is a "creditor" of the estate because, as a guarantor of the partnership–CSB loans, he has a contingent right to payment against the partnerships that will become fixed upon his payment of their obligations on the loans. 11 U.S.C. § 101(4)(A) and (9)(A); *Robinson Bros. Drilling*, 97 B.R. at 82–83. Under the Utah Partnership Act, Larsen also has a contingent right to payment against Granada because it is the general partner of the partnerships. Utah Code Ann. § 48–1–12(2) (1989) ("All partners [in a general partnership] are liable: ... Jointly for all other debts and obligations of the partnership ..."); Utah Code Ann. § 48–2–9 (1989) (General partner of a limited partnership has all of the same liabilities as a

---

8. 11 U.S.C. § 547(b) states:
   Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

9. The court has focused its attention on Larsen as opposed to the partnerships because of its adoption of the conduit theory *infra*. It would not be logical to avoid Granada's transfers to the partnerships under 11 U.S.C. § 547(b) because they were "to or for the benefit" of the partnerships and then, for purposes of recovery under § 550(a)(1), ignore their status as entities that are separate and distinct from Granada. Thus, if the trustee seeks to ignore the partnerships' existence for purposes of § 550(a)(1), he must rely on a separate insider-creditor for purposes of avoidability under § 547(b).

partner in a partnership without limited partners); (see Pre-trial Order at 4–5.) Accordingly, § 547(b)(1) is satisfied since the transfers of monies from Granada's inter-office account to the partnerships were made "for the benefit of a creditor." Because of Utah partnership law, Granada is likewise liable for all of the loans that CSB extended to the partnerships and, therefore, the transfers in question were made to the partnerships "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2); *Granada I*, 110 B.R. at 551. The parties have stipulated that Larsen is an insider of Granada since he was the president of Granada during the time in question; 11 U.S.C. § 101(30)(B); and, therefore, the one year reach-back provision of § 547(b)(4)(B) applies. (*See* Pre-trial Order at 5.) Based on the aforementioned dates, it is clear that the transfers in question were made by Granada to the partnerships between ninety days and one year before the date that it filed its bankruptcy petition. Furthermore, the court finds that the evidence presented by the trustee regarding Granada's insolvency during the prepetition year is credible and, therefore, § 547(b)(3) is satisfied. (Transcript 2 at 26–33; 35–50.) Finally, because Larsen's claims against the estate are unsecured, the transfers by Granada to the partnerships enabled him to receive more than he would have received if: "(1) the case were a case under Chapter 7 ...; (2) the transfer[s] had not been made; and (3) [Larsen had] received payment of such debt[s] to the extent provided by the provisions of [the Bankruptcy Code]." 11 U.S.C. § 547(b)(5); (Transcript 2 at 33–34); *see* Trustee's Proposed Disclosure Statement, Case No. 87C–00693, Doc. No. 674, at 1–2 (the trustee's proposed plan contemplates a liquidation of all of the assets of the estate. The unsecured creditors will not receive a 100% return).

Having decided that the transfers in question are avoidable as preferences under § 547(b), the court must determine from whom the trustee may recover the funds. Under § 550(a), the trustee may recover the property transferred or the val-

ue of such property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." The issue to be resolved in this case, therefore, is whether the defendants qualify as transferees under § 550(a).

■ The trustee asserts that CSB is an "initial transferee" within the meaning of § 550(a)(1) because Granada controlled the partnerships' accounts and, therefore, the transfer was "merely a preliminary step in a single transfer to CSB." (Trustee's Trial Brief at 14.) The defendants oppose CSB being classified as an "initial transferee" arguing that the court must view Granada as a "separate and distinct entity" from the partnerships and, as such, the partnerships are the "initial transferees". (Defendants' Trial Brief at 7.) They maintain that upon Granada's transfer of funds from the inter-office account to the partnerships' accounts the monies became those of the partnerships who then transferred them to CSB. The court concludes that the defendants' argument is without merit.

The term "initial transferee" is not defined in the Bankruptcy Code. Consequently, courts have generally evaluated the status of the parties in light of the entire transaction; *Nordberg v. Societe Generale (In re Chase & Sanborn, Corp.)*, 848 F.2d 1196, 1199 (11th Cir.1988); and have attempted to define the term "initial transferee" within its "logical limits." *Kaiser Steel Resources, Inc. v. Jacobs (In re Kaiser Steel Corp.)*, 110 B.R. 514, 519 (D.Colo.1990). In so doing, courts have excepted from the scope of "initial transferee" a party who acts only as " 'a mere custodian, an intermediary or conduit ...' " to the transaction. *Salomon v. Nedlloyd (In re Black & Geddes, Inc.)*, 59 B.R. 873, 875 n. 4 (Bankr.S.D.N.Y.1986) (quoting Judge Cardozo in *Carson v. Federal Reserve Bank*, 254 N.Y. 218, 235–36, 172 N.E. 475 (1930)); *see Kaiser Steel*, 110 B.R. at 519–20 (citing *Lowry v. Security Pac. Business Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26 (4th Cir. 1989); *Chase & Sanborn Corp.*, 848 F.2d

at 1196; *Bonded Fin. Serv., Inc. v. European Am. Bank,* 838 F.2d 890 (7th Cir. 1988); *Metsch v. First Ala. Bank (In re Colombian Coffee Co.),* 75 B.R. 177 (S.D. Fla.1987); *Jet Fla., Inc. v. Airlines Clearing House, Inc. (In re Jet Fla. Sys., Inc.),* 69 B.R. 83 (Bankr.S.D.Fla.1987); *Ducker v. Fairmeadows II (In re Bridges Enter., Inc.),* 62 B.R. 300 (Bankr.S.D.Ohio 1986); *Gropper v. UNITRAC, S.A. (In re Fabric Buys of Jericho, Inc.),* 33 B.R. 334 (Bankr. S.D.N.Y.1983)); [10] *see also Huffman v. Commerce Sec. Corp. (In re Harbour),* 845 F.2d 1254 (4th Cir.1988); *In re Mill St., Inc.,* 96 B.R. 268 (9th Cir. BAP 1988); *In re Moskowitz,* 85 B.R. 8 (E.D.N.Y.1988); *Rafoth v. First Nat'l Bank (In re Baker & Getty Fin. Serv., Inc.),* 98 B.R. 300 (Bankr. N.D.Ohio 1989); *Armstrong v. Ketterling (In re Anchorage Marina, Inc.),* 93 B.R. 686 (Bankr.D.N.D.1988); *Robinson v. Home Sav. (In re Concord Senior Housing Found.),* 94 B.R. 180 (Bankr.C.D.Cal. 1988).

Although well established, the conduit theory is not usually asserted by the trustee as an offensive means of recovering a preferential or fraudulent transfer. *But see Columbia Data Prods.,* 892 F.2d at 26 (trustee asserted conduit theory); *Granada I,* 110 B.R. at 552–53 (suggesting that the conduit theory may be asserted by trustee). Rather, in the majority of cases, the theory has been argued by the defendant to an avoidance action as a defense to being held liable as a transferee under

§ 550(a)(1). In the instant case, the trustee asserts the conduit theory offensively so as to allow him to eliminate the transfers that Granada made to the partnerships and recover the monies that were transferred from the defendants as "initial transferee[s]." [11] The court concludes that the theory may be used by the trustee in this case because the reasons for applying it are present.

In determining whether an entity is acting as a "conduit" or a "mere instrumentality," courts have applied several different tests. Of relevance to this case is the "dominion and control test." *See, e.g., Chase & Sanborn Corp.,* 848 F.2d at 1199–1200; *Bonded Fin. Serv.,* 838 F.2d at 890; *Kaiser Steel,* 110 B.R. at 520–21; *In re Mill St., Inc.,* 96 B.R. at 269; *In re Musurlian,* 97 B.R. 985, 987–90 (Bankr.W.D.Wis. 1989); *In re Concord Senior Housing Found.,* 94 B.R. at 182–83.[12] As stated by the court in *Bonded Fin. Serv.,* 838 F.2d at 893, "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." The defendants in this case argue that CSB cannot be held to be the "initial transferee" under § 550(a)(1) because upon Granada's deposit of funds into the partnerships' accounts they had, as separate and distinct entities, the power to control the funds.

Contrary to the defendants' arguments, Granada did not lose control of the funds

**10.** A thorough discussion of the development of the conduit doctrine is found in *Kaiser Steel Resources, Inc. v. Jacobs (In re Kaiser Steel Corp.),* 105 B.R. 639, 644–48 (Bankr.D.Colo. 1989), *rev'd,* 110 B.R. 514, 521 (D.Colo.1990) (although reversed based on its analysis under agency law, the bankruptcy court's discussion of the history of the conduit doctrine is cited with approval by the district court).

**11.** Although asserted and argued, the trustee has avoided claiming that CSB is an "immediate or mediate transferee" under 11 U.S.C. § 550(a)(2) because that subsection is subject to the good faith provisions of § 550(b). The court need not reach this issue because it finds that the monies are recoverable from the defendants under § 550(a)(1).

**12.** Without ruling on the propriety of the different tests, the court points out that in addition to the "dominion and control test," courts have

employed a "good faith" test; *see, e.g., Huffman v. Commerce Sec. Corp. (In re Harbour),* 845 F.2d 1254, 1257 (4th Cir.1988); a "benefit" test; *see, e.g., In re Dietz,* 94 B.R. 637 (9th Cir.BAP 1988); and a "debtor-creditor relationship" test; *see, e.g., Lowry v. Security Pac. Business Credit, Inc. (In re Columbia Data Prods., Inc.),* 892 F.2d 26 (4th Cir.1989). A review of the case law indicates that, depending on the facts of the particular case, courts will apply either one of the above-mentioned tests, or a combination thereof. The defendants in this case assert that the latter two tests should preclude the court from finding that CSB is the initial transferee under 11 U.S.C. § 550(a)(1). The court concludes that such tests are not applicable in this case because the evidence proves that Granada and the partnerships operated as one and the same entity for cash management purposes.

transferred from its interoffice account simply because they were diverted into the interrelated partnerships' accounts. *Cf. United States v. Cardall,* 885 F.2d 656, 677–78, 679 (10th Cir.1989) (citing § 541, the court held that a debtor's funds did not lose their status as the debtor's property simply because they were diverted into interrelated company accounts, and thus, defendants who took money out of the interrelated accounts could be convicted of bankruptcy fraud). This is especially so given the clear state of the evidence showing that the partnerships' cash management was controlled by Granada, and that the partnerships did not have any independent ability to control the disposition of the funds that were downstreamed to them by Granada.

Analogizing the facts in the present case to those in cases involving a third party who advances money to a debtor so as to enable the debtor to pay a creditor, the court points out that, in discussing whether the debtor has a sufficient interest in the property that was transferred to satisfy §§ 547(b) or 548, courts have consistently stated that the transfer must have depleted the debtor's estate. *See, e.g., Brown v. First Nat'l Bank,* 748 F.2d 490 (8th Cir. 1984); *New York City Shoes, Inc. v. Best Shoe Corp.,* 98 B.R. 725 (Bankr.E.D.Pa.), *aff'd,* 106 B.R. 58 (E.D.Pa.1989). Pertinent to this case is the fact that the focus of such an inquiry is whether the debtor had control over the transferred funds. *Nordberg v. Sanchez (In re Chase & Sanborn Corp.),* 813 F.2d 1177 (11th Cir.1987); *Brown v. First Nat'l Bank,* 748 F.2d at 725; *Stratton v. Equitable Bank, N.A.,* 104 B.R. 713 (D.Md.1989); *New York City Shoes,* 98 B.R. at 729. As stated by the court in *New York City Shoes,* 98 B.R. at 729, "[i]f the debtor, rather than the third party, has the power to determine how the funds can be used, then the debtor's exercising its discretion to disperse the funds, as opposed to retaining them, *is* an act which diminishes the assets of the *debtor's estate.*" (emphasis in the original) (emphasis added.) *See also In re Hartley,* 825 F.2d 1067, 1070–72 (6th Cir.1987); *Coral Petroleum, Inc. v. Banque Paribas–Lon-*

*don,* 797 F.2d 1351, 1355–56 (5th Cir.1986); *In re Howdeshell,* 55 B.R. 470, 474 (Bankr. M.D.Fla.1985) (In determining that funds wired from the parent company to the debtor were the debtor's property for purposes of § 547(b), the court stated that "[i]f the Debtor determines the disposition of the funds and designates the creditor to whom payment is made … the funds are an asset of the estate.") (citing *In re Garden Grain & Seed Co.,* 221 F.2d 382, 393 (10th Cir. 1955)). Therefore, funds that are transferred by one entity to a seemingly different entity do not lose their status as the transferor entity's funds if the transferee is in fact controlled by the transferor.

In this case, the evidence is clear that Granada determined which creditors were to be paid from the funds that it had transferred from its interoffice account into the partnerships' accounts and then actually controlled the payment of those creditors. In particular, Granada employees: (1) maintained the partnerships' ledgers, thereby determining when their accounts needed a downstream transfer; (2) made the necessary deposits into the partnerships' accounts from funds in the interoffice account; and (3) drafted and signed the corresponding checks from the partnerships' accounts to CSB. The defendants cannot be protected by pointing to the separate and distinct nature of Granada and the partnerships when the evidence proves that in reality they were one and the same entity for purposes of cash management. *See Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823, 830 (5th Cir.) (court disregarded corporate separateness and held that the debtor-corporation's payments on defendant-bank's loan to sole stockholder were not avoidable as there was fair consideration. In so holding the court stated that "[i]t is one thing to observe the corporate fiction as if the fiction were the truth— when the fiction is not abused. It is quite a different thing when the sole stockholder … ignores the corporation as a separate entity …"), *cert. denied.,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960), *cited with approval in, Bonded Fin. Serv.,* 838 F.2d at 893. Accordingly, notwithstanding the

fact that Granada and the partnerships may appear to be legally separate entities, the court concludes that Granada was in control of the partnerships' bank accounts and the funds that were transferred into them and, therefore, the funds remained Granada's.

Since the partnerships did not have control over the disposition of the funds that were deposited into their accounts by Granada, the court concludes that they are mere conduits to the transactions in question. By disregarding the transfers that were made by Granada to the partnerships, the court finds that CSB was the "initial transferee" and, therefore, the trustee may recover the funds in question from the defendants under § 550(a)(1).

## CONCLUSION

The court concludes that the transfers that Granada made within the prepetition year to the partnerships are avoidable as preferences under § 547(b) because they were made on account of an antecedent debt that was owed by Granada for the benefit of Larsen, an insider, which allowed him to receive more than he would have received if this case were one under Chapter 7, if the transfers had not been made, and if he were to receive a distribution under provisions of the Code. The court further finds that the partnerships are conduits and, therefore, CSB is the "initial transferee" of the transfers under § 550(a)(1). Accordingly, the trustee may recover $76,777.39 from the defendants.[13]

In addition, the trustee is entitled to recover the statutory rate of interest from the date that he first made a demand on the defendants for the return of the monies.

The evidence reveals that the trustee did not make a demand on the defendants for the monies recoverable based on the Suntrail transfers and, therefore, he is entitled to interest on each of those amounts from June 20, 1989, the date on which he filed his complaint, until February 14, 1990, the date on which the trial commenced. As for the Ashley and Westwood transfers, the trustee demanded that the defendants return the monies by two letters that were sent before the date that he filed his complaint. (Plaintiff's Exhibits 20–21.) In his first letter dated April 28, 1989, the trustee demanded that within ten days the defendants return to the estate the monies that had been transferred to CSB from Westwood, and the amounts of the June 6, 1986, and June 30, 1986, transfers from Ashley. (Plaintiff's Exhibit 21.) Accordingly, interest on the amounts recoverable for those transfers is due from May 8, 1989, the day on which the monies should have been returned to the estate by the defendants, until February 14, 1990. Finally, the evidence reveals that in a letter dated May 16, 1989, the trustee demanded that within ten days the defendants return to the estate the monies that CSB had received from Ashley on February 18, 1986. (Plaintiff's Exhibit 20.) The trustee, therefore, is entitled to interest on the recoverable amount

---

**13.** The recoverable sum was calculated by looking at the amount of the transfer that Granada had made to the particular partnership and then comparing it to the amount of the partnership's corresponding transfer to CSB. In each instance the court took the lesser of these two amounts. Accordingly, based on the facts:

|  | Granada to partnership | Partnership to CSB | Recoverable amount |
|---|---|---|---|
| Ashley | $27,000.00 | $37,948.97 | $27,000.00 |
| Ashley | $21,000.00 | $24,959.00 | $21,000.00 |
| Suntrail | $ 7,745.00 | $ 3,045.67 | $ 3,045.67 |
| Westwood | $ 4,240.00 | $ 4,234.49 | $ 4,234.49 |
| Ashley | $12,000.00 | $11,489.00 | $11,489.00 |
| Suntrail | $ 2,800.00 | $  877.40 | $  877.40 |
| Westwood | $ 5,100.00 | $ 5,069.83 | $ 5,069.83 |
| Suntrail | $ 2,300.00 | $ 2,301.29 | $ 2,300.00 |
| Suntrail | $ 1,900.00 | $ 1,761.00 | $ 1,761.00 |
| TOTAL RECOVERABLE: | | | $76,777.39 |

of that transfer from May 26, 1989, until February 14, 1990.

IT IS HEREBY ORDERED that the defendants pay to the estate the amount of $76,777.39 plus the statutory rate of interest calculated in accordance with the terms of this opinion.