In re GRANADA, INC., Debtor.

Peter W. BILLINGS, trustee for Granada, Inc., Plaintiff/Appellee,

v.

KEY BANK OF UTAH, Commercial Security Bank and Commercial Security Key Bank, Defendants/Appellants.

Civ. No. C–90–667W.
Bankruptcy No. 87C–00693.

United States District Court,
D. Utah, Central Division.

Nov. 20, 1990.

Peter W. Billings, Jr., Robert P. Rees, Salt Lake City, UT, for plaintiff, trustee.

Robert D. Merrill, Carolyn Montgomery, William R. Richards, Salt Lake City, UT, for defendants.

Robert A. Goodman, Virginia S. Smith, Salt Lake City, UT, for First Interstate Bank.

Jeffrey W. Shields, Salt Lake City, UT, for West One Bank.

Memorandum Decision and Order

WINDER, Chief Judge.

This matter is before the court on appeal from a bankruptcy court Memorandum Opinion and Order dated May 25, 1990. 115 B.R. 702. A hearing was held on October 10, 1990, at which the trustee, Peter W. Billings, Jr., represented himself. He was assisted by Robert P. Rees. The defendants were represented by William R. Richards. The court allowed First Interstate Bank of Utah and West One Bank, Utah to submit memoranda and appear as amicus curiae. First Interstate was represented at the hearing by Robert A. Goodman and West One was represented by Jeffrey W. Shields. The court had carefully read the relevant documents submitted by the parties before the hearing, and at the conclusion of the hearing, the court took the matter under advisement. Having considered the matter further, the court now renders the following memorandum decision and order.

This court must accept the bankruptcy court's findings of fact unless the findings are clearly erroneous. Bankr.Rule 8013; *Rowe Int'l v. Herd*, 840 F.2d 757, 759 (10th Cir.1988). In addition, this court must make a *de novo* review of the bankruptcy court's legal conclusions. *Id.* The defendants do not contend on appeal that the bankruptcy court's factual findings are clearly erroneous. Consequently, this court will accept and briefly set out the facts as found by the bankruptcy court.

During all times relevant to this motion, Granada was a general partner in two Utah limited partnerships, Ashley Creek, Ltd. and Suntrail Enterprises. Granada was

also a partner in one Utah general partnership, Westwood Partners. These three partnerships will be referred to collectively as "the partnerships." Between 1982 and 1984 Commercial Security Bank made a loan to each of the partnerships. The loans were secured by partnership property and guaranteed by C. Dean Larsen, the president of Granada. Key Bank is the successor-in-interest to Commercial Security Bank. The three defendants will be referred to collectively as "the defendant" or "Key Bank."

The dispute in this case grows out of a particular management practice carried on by Granada. As the partnerships' general partner, Granada did not allow funds to accumulate in the individual partnerships. As revenues were received by the partnerships, Granada would "upstream" the excess funds to an account in Granada. Such transactions were recorded on Granada's and the partnerships' books as either increases in Granada's debt to the partnerships or reductions in the partnerships' debt to Granada. When the partnerships needed funds to meet expenses, Granada would "downstream" funds back to the partnerships. These transactions were recorded on Granada's and the partnerships' books as either reductions in Granada's debt to the partnerships or increases in the partnerships' debt to Granada. Checks were then drawn on the partnerships' accounts to cover the partnerships' immediate obligations. Funds were transferred to the partnerships only when necessary to meet expenses. Otherwise, the funds upstreamed from the partnerships were used to meet Granada's expenses or transferred to other partnerships. Pursuant to this practice, the defendant received checks drawn on the partnerships' accounts as payments on the loans the bank had made to the partnerships.

The bankruptcy court found that the debts created by the upstreaming and downstreaming of funds between Granada and the partnerships were never reduced to "notes and repayment schedules were never generated." *Billings v. Key Bank*, 115 B.R. 702, 705 (Bankr.D.Utah 1990). The entities relied entirely on bookkeeping entries to keep track of the transfers. The bankruptcy court also found that "Granada controlled the bank accounts of the partnerships...." *Id.* at 706.[1] For purposes of cash management, Granada and the partnerships operated as one entity.

On February 13, 1987, Granada filed a Chapter 11 bankruptcy petition, and in June 1987 the trustee was appointed. The trustee brought this action against Key Bank seeking to recover preference payments made by Granada. The trustee argued that Granada preferred Key Bank by transferring funds to the partnerships which transferred the funds to the bank and that he should be permitted to recover directly from Key Bank as the initial transferee under 11 U.S.C.A. § 550(a) (West 1979 & Supp.1990).[2] The trustee took the position that the partnerships were not transferees under § 550. The trustee maintained that the partnerships were mere conduits between Granada and the bank. In response, Key Bank denied that the partnerships were conduits. The bank insisted that the partnerships were initial transferees and the bank was a subsequent

---

1. The bankruptcy court stated:

   In particular, the partnerships' checkbooks were kept at Granada's place of business. All of the checks that were generated by the partnerships to CSB had Granada's address printed on them and were signed by its employees. Moreover, the partnerships' bank statements were sent to Granada's place of business, and its employees prepared the partnerships' financial reports, and maintained their checking account records and general ledgers. (citations omitted)

   *Id.* at 706.

2. Section 550(a) states:

   Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.

   *Id.*

transferee. The bankruptcy court agreed with the trustee.

The bankruptcy court divided its analysis into two parts. The court first found that the transfers from Granada were preference payments under 11 U.S.C.A. § 547(b) (West 1979 & Supp.1990). The court found that all the elements of § 547(b) were met including the requirement that the transfers were made "to or for the benefit of a creditor." *Id.* The court determined that the transfers from Granada benefitted Granada's president, C. Dean Larsen, since he personally guaranteed the loans from Key Bank to the partnerships.

On appeal the defendant takes issue with this part of the bankruptcy court's analysis. The defendant argues that the bankruptcy court's reasoning ignores the fact that the funds were initially transferred from the debtor to the partnerships. Since Larsen had no contingent liability on the debt between Granada and the partnerships, the defendant argues that Larsen could not be a creditor who benefitted from the initial transfer.

This court will not reexamine the bankruptcy court's conclusion that the transfers were preference payments under § 547. Even if the transfers were not preferential as to Larsen, they were clearly preferential as to the partnerships. Consequently, further analysis under § 547 is not helpful to the ultimate resolution of this dispute.

■ The second part of the bankruptcy court's analysis addressed the issue of liability under § 550. That court determined that the defendant was an initial rather than a subsequent transferee under § 550(a). The court reasoned that since the partnerships had no practical dominion or control over the transferred funds, they should be considered nothing more than mere conduits through which the payments passed. Accordingly, the bankruptcy court found that the trustee may recover the funds from the defendant as the initial transferee. This court believes that the bankruptcy court's analysis under § 550 must be reversed for the reasons stated below.

■ The conduit theory has been developed by the courts in an effort to avoid unfairness that might result from the literal application of 550(a). *Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.),* 33 B.R. 334 (Bankr.S.D.N.Y.1983), *citing,* 4 *Collier on Bankruptcy* § 550.02, at 550–8 (15th ed. 1985). The concerns underlying development of the conduit theory are reflected in Chief Justice Cardozo's commonly cited language in *Carson v. Federal Reserve Bank:*

> The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed.

254 N.Y. 218, 172 N.E. 475, 482 (1930). In *Carson* the court held that a federal reserve bank that acted as an agent for its member banks in collecting funds from an insolvent bank was not liable for the funds collected and credited to its members' accounts. Following the rationale in *Carson,* courts have recently held that preference payments cannot be recovered from entities that act as nothing more than conduits between debtors and their preferred creditors. *See e.g. Kaiser Steel Resources, Inc. v. Jacobs (In re Kaiser Steel Corp.),* 110 B.R. 514 (D.Colo.1990), *aff'd on other grounds, Kaiser Steel Corp. v. Charles Schwab & Co., Inc.,* 913 F.2d 846 (10th Cir.1990); *In re Fabric Buys of Jericho, Inc.,* 33 B.R. 334. These courts have concluded that a conduit does not constitute an initial transferee under § 550(a). Instead, a creditor who received a preference payment from a conduit is liable as an initial transferee. This prevents the creditor from raising the defense provided in § 550(b) for subsequent transferees.[3]

---

**3.** Subsection (b) states:
  The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present of antecedent debt, in good faith, and without

■ The conduit theory may be used either offensively or defensively. An intermediary may defend against an action to recover a preference by demonstrating that it was a mere conduit between a debtor and its creditor. *In re Kaiser Steel Corp.*, 110 B.R. 514; *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334. Alternatively, in an effort to bypass an intermediary, a trustee may argue that the intermediary served as nothing more than a conduit of funds. *Lowry v. Security Pacific Business Credit, Inc.* (*In re Columbia Data Prod. Inc.*), 892 F.2d 26 (4th Cir.1989); *Ross v. John Mitchell, Inc.* (*In re Dietz*), 94 B.R. 637 (Bankr. 9th Cir.1988), *aff'd*, 914 F.2d 161 (9th Cir.1990). In the present case the trustee asserts the conduit theory offensively in order to prevent Key Bank from defending under § 550(b). The critical question is whether the partnerships acted as conduits such that Key Bank should be treated as the initial transferee under § 550(a).

■ Courts have used several different tests in their effort to determine the circumstances under which an entity should be considered a conduit. *Billings v. Key Bank*, 115 B.R. at 709 n. 12.[4] The bankruptcy court did not apply all of these tests. The bankruptcy court believed that since the partnerships qualified as conduits under the "dominion and control" test, the application of any other test was unnecessary. This court believes that the bankruptcy court's approach is unnecessarily restrictive. However, the court believes that the partnerships in this case do not qualify as conduits even if our analysis is limited to the dominion and control test.

The dominion and control test was introduced by the Seventh Circuit in *Bonded Fin. Serv. v. European Am. Bank*, 838 F.2d 890. *In re Kaiser Steel Corp.*, 105 B.R. 639, 646 (Bankr.D.Colo.1989), *rev'd*, 110 B.R. 514 (D.Colo.1989). The Seventh

Circuit determined that the "minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* at 893. Conversely, an entity through which a preference payment is transferred that has no dominion over the payment is a mere conduit that cannot be required to account for the payment.

In *Bonded* the debtor, Bonded Financial Services, sent a check to European American Bank to be deposited in a creditor's general account. The check was made payable to the bank. Ten days later the creditor instructed the bank to remove the funds from the creditor's general account and apply them to a loan account at the same bank. Soon thereafter the creditor satisfied the balance of the loan and the bank released its security interest in the creditor's collateral. Since the creditor was insolvent, the debtor's trustee attempted to recover the preference payment from the bank. The court stated:

> As the Bank saw the transaction on January 21, it was Ryan's agent for the purpose of collecting a check from Bonded's bank. It received nothing from Bonded that it could call its own; the Bank was not Bonded's creditor, and Ryan owed the Bank as much as ever. the Bank had no dominion over the $200,-000 until January 31, when Ryan instructed the Bank to debit the account to reduce the loan;

*Id.* at 893–94 (Citations omitted). On this basis the court held that the bank was not an initial transferee but a conduit between Bonded and Ryan.

The Eleventh Circuit applied a control test in *Nordberg v. Societe Generale* (*In re Chase & Sanborn, Corp.*), 848 F.2d 1196 (11th Cir.1988), to determine whether a bank was an initial transferee or merely a conduit. The court held that a bank that had received funds from a debtor was a

knowledge of the voidability of the transfer avoided; or

  (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C.A. § 550(b) (West 1979).

**4.** This court agrees with the bankruptcy court in *In re Kaiser Steel Corp.*, 105 B.R. 639, 647 n. 11

(Bankr.D.Colo.1989), *rev'd*, 110 B.R. 514 (D.Colo.1989), *aff'd on other grounds, Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846 (10th Cir.1990), that good faith analysis should be restricted to § 550(b).

mere conduit of the funds between the debtor and the bank's customer. The court arrived at this conclusion despite the fact that the bank had technically become its customer's creditor since the bank had honored a check drawn on the funds subsequently received from the debtor. The court held that the transaction in question should be viewed as one in which the bank allowed its customer to draw upon funds that were simultaneously deposited into the customer's account. Viewed in this way, the bank had no control over the funds whatsoever and could not be considered an initial transferee.

A control test was also applied by a district court in the Tenth Circuit. In *In re Kaiser Steel Corp.*, 110 B.R. 514, a Colorado district court stated:

> [The defendant] never held a beneficial interest in any [of the debtor's] stock, received no consideration for facilitating the conversion of its customers' stock, and had no ability to control the disposition of funds paid to its customers in the merger. It was simply a financial intermediary, not a "transferee."

*Id.* at 521. The alleged conduit and defendant, Charles Schwab & Co., Inc., was a discount brokerage house. Schwab had received funds from the debtor and distributed the funds to Schwab's customers as part of a stock redemption program. The bankruptcy court concluded that Schwab's status as a conduit or transferee should turn solely on agency principles. On this basis the bankruptcy court found that as an agent acting on behalf of an undisclosed or partially disclosed principle, Schwab could not be considered a conduit as a matter of law. The district court reversed the bankruptcy court's ruling because "Schwab's role in the stock redemption was almost identical to that of the securities clearinghouses and related entities who were earlier dismissed from the action." *Id.* at 520–21.

The court believes that *Bonded, In re Chase & Sanborn, Corp.* and *In re Kaiser Steel Corp.* are distinguishable from the present case. Unlike the conduits in those cases, the partnerships in the present case received something from Granada that they could call their own. They received funds with which they were able to reduce their liability to Key Bank. Unlike the situation in the cases discussed above, a debtor-creditor relationship did exist between Granada and the partnerships. Unlike the situation in those cases, the partnerships in the present case did have dominion over the funds received from Granada until payments were made to Key Bank.

■ The dominion and control test as set out in *Bonded* requires only that an entity have the "right to put the money to [its] own purposes." In the present case, the partnerships had the right and did, in fact, put the money to their own purposes. They used the funds to reduce their debt to Key Bank. In contrast, the conduits in *Bonded* and the cases following *Bonded* had no right, power, or claim of any kind to the funds transferred through them. The partnerships in the present case were simply not financial intermediaries and couriers in the same way as were the conduits in *Bonded* and the cases following it.

■ The bankruptcy court was concerned with the fact that Granada not only controlled the funds transferred to the partnerships but also controlled the disposition of the partnerships' funds. This fact, however, does not mean that the partnerships had no control over the money. The partnerships properly exercised control over the funds through Granada, their general partner. Granada's control over the funds was also the partnerships' control over the funds. The trustee has offered no persuasive reason why Granada should be treated as an entity foreign to the partnerships. To follow the trustee's reasoning would mean that partnerships would almost always be conduits of their general partners since general partners always control their partnerships. Such a rule would, in this court's opinion, go far beyond what the conduit theory was designed to accomplish.

■ Other tests developed in an effort to distinguish between a conduit and an initial transferee support this court's belief that the partnerships in the present case were

not conduits. Some courts have indicated that an entity is not a conduit if the entity is benefitted by the transfer of funds through it.[5] In *In re Columbia Data Prod., Inc.*, 892 F.2d 26, the debtor made preference payments to a creditors committee which transferred the funds to a creditor named Logan. Logan transferred the funds to one of its creditors, Security Pacific Business Credit. Logan had previously assigned the funds to Security Pacific. The debtor's trustee attempted to recover the funds from Security Pacific as an initial transferee under § 550. The trustee argued among other things that Logan was a conduit since it "did not exercise dominion and control over the transfers...." as required by *Bonded*. The trustee reasoned that Logan could not exercise control over the funds because it had assigned the funds. The Fourth Circuit disagreed:

> Although Logan agreed to deposit the funds received from CDP (by way of the Committee) in the United Jersey account for ultimate transfer to Security Pacific, Logan used the funds for its own purpose—to reduce its debt to Security Pacific. The fact that Logan could not have used the funds for other purposes does not affect this critical factor.

*Id.* at 29. The partnerships in the present case are, in all material respects, indistinguishable from Logan. For different reasons, neither Logan nor the partnerships had any practical control over the funds transferred through them. Logan had assigned the funds to Security Pacific. Just as the transfers from Granada to the partnerships altered the debts that existed between Granada and these entities, Logan's receipt of funds from the debtor altered the debt that existed between the debtor and Logan. Just as the partnerships used the funds for their own purposes—to re-

duce their debts to Key Bank—Logan used the funds transferred through it to reduce its debt to Security Pacific.

The court in *In re Colombian Coffee Co.*, 64 B.R. 585, also found it relevant that the alleged conduit was benefitted by the preference transfer.[6] In *Metsch* the debtor transferred a preference payment to the defendant bank, which was controlled by the debtor. The defendant transferred the payment to a second bank for the benefit of a corporation related to the debtor. The court refused to allow the debtor's trustee to recover the preference from the defendant. The court found that the bank was a conduit.

Although it may be argued that the decision can be based upon the control that the debtor exercised over the defendant bank, the court did not emphasize the control issue.[7] Rather the court found that the "defendant neither received nor retained any benefit from the $1.6 million transfer which is in question here other than its nominal banking charges." *Id.* at 586. The benefit received by the partnerships in the form of reduced debts to Key Bank is an important factor which distinguishes the present case from *In re Colombian Coffee Co.*

Several courts have indicated that the existence of a debtor-creditor relationship between the debtor and the alleged conduit is a relevant factor. *In re Columbia Data Prod., Inc.*, 892 F.2d at 28 ("When a creditor receives money from its debtor to pay a debt, the creditor is not a mere conduit."); *Bonded Fin. Serv. v. European Am. Bank*, 838 F.2d at 893 (The alleged conduit "received nothing from [the debtor] that it could call its own; the [alleged conduit] was not [the debtor's] creditor...."); *In re*

---

**5.** A nominal benefit such as banking fees are normally ignored for purposes of this inquiry. *Metsch v. City Nat'l Bank (In re Colombian Coffee Co.)*, 64 B.R. 585 (Bankr.S.D.Fla.1986). On the other hand, the trustee may be permitted to recover the fees retained, *Commercial Recovery, Inc. v. Mill Street, Inc. (In re Mill Street, Inc.)*, 96 B.R. 268 (Bankr. 9th Cir.1989).

**6.** *In re Colombian Coffee Co.* is factually similar to the present case in that the alleged conduit

was controlled by the debtor rather than by the creditor.

**7.** In fact, it appears that the court ignored the control issue entirely. The court stated that the bank's "role in this transfer was indistinguishable from that of the defendant Alabama bank in *Metsch v. First Alabama Bank of Mobile (Colombian Coffee Co., Inc.)* 59 B.R. 643 (Bkrtcy. S.D.Fla.1986)." In the Alabama case the debtor did not control the defendant bank.

*Chase & Sanborn, Corp.*, 848 F.2d at 1201 (Although the alleged conduit had technically become the debtor's creditor, "no real debtor-creditor relationship" existed.). In the present case, it is undisputed that a debtor-creditor relationship existed between Granada and the partnerships. This fact, among others, makes it difficult to view the partnerships as conduits.

■ A careful examination of the above cited and other related cases leads to the conclusion that the partnerships were initial transferees rather than conduits between Granada and Key Bank. The fact that many of the cases discussed above involve defensive rather than offensive uses of the conduit theory is of no consequence. An entity's status as a conduit should not change depending upon who asserts the theory. In fact, cases that assert the conduit theory defensively provide a useful perspective from which to view the present case. If the trustee had attempted to recover the preference from the partnerships rather than from Key Bank, any attempt by the partnerships to defend based on the conduit theory would be unavailing. Had that occurred, this court is of the opinion that the partnerships would be unsuccessful in arguing that they were innocent financial intermediaries or couriers against which a preference could not be recovered. For these same reasons the trustee should not be permitted to ignore the partnerships in his attempt to reach Key Bank.

■ One final factor persuades the court to reject the trustee's position: The trustee still has a way of reaching Key Bank under § 550. Section 550(a) indicates that the trustee is not limited to recovering the preference from the initial transferee. The trustee may recover from "any immediate or mediate transferee of such initial transferee" unless a subsequent transferee can demonstrate a defense under § 550(b). This means that Key Bank must disgorge the preference unless it can defend under § 550(b). This possibility eliminates the need to expand the conduit concept.

This court believes that the correct result will be reached if Key Bank is treated as a subsequent transferee. The bank should be required to account for the preference if it does not qualify for subsection (b) protection.

Accordingly, the bankruptcy court's order is HEREBY REVERSED AND REMANDED for a determination of whether the trustee may recover the preference payments from Key Bank as a subsequent transferee.