**In re DENMAN & CO., Debtor.**

**Ronald DURKIN, Chapter 7 Trustee of Denman & Co., Plaintiff,**

v.

**PIPER TRUST COMPANY, a Minnesota Trust company, f/k/a "Piper Jaffray Trust Company", Defendant.**

**Bankruptcy No. SA 92–12665 JR.
Adv. No. SA 94–01292 JR.**

United States Bankruptcy Court, C.D. California.

Sept. 11, 1995.

Ira D. Kharasch of Pachulski, Stang, Ziehl & Young, Los Angeles, CA, for plaintiff.

Clarisse W.J. Young of Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

On October 1, 1990, Piper Trust Company ("Piper") entered into an agreement with Denman & Co. ("Debtor") whereby Debtor would administer the assets of the Denman Commingled Bond Fund (the "Denman Fund"). On October 22, 1990, Piper entered into a trust agreement (the "Trust Agreement") with the State of Florida ("Florida"). Pursuant to Florida's directions, Piper invested $100,000,000 (the "Florida Assets") in the Denman Fund. Later, Debtor made four transfers totalling $260,847.66 (the "Transferred Assets") to Piper. On March 12, 1992, Debtor filed for relief under chapter 7 of title 11 of the United States Code §§ 101–1330 (1995) (the "Code").

On March 30, 1995, Ronald Durkin ("Durkin"), the chapter 7 trustee of Debtor's estate, filed a third amended complaint seeking to avoid and recover the Transferred Assets from Piper (the "Complaint"). On May 22, 1995, Piper filed the motion to dismiss or in the alternative for summary judgment (the "Motion"). At a hearing on July 5, 1995, I

took the summary judgment matter under submission.

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (1995) (the district courts shall have original and exclusive jurisdiction of all cases under title 11), 28 U.S.C. § 157(a) (1995) (authorizing the district courts to refer all title 11 cases and proceedings to the bankruptcy judges for the district), and General Order No. 266, dated October 9, 1984 (referring all title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) (1995).

## STATEMENT OF FACTS

Piper is a Minnesota trust company that administers and invests assets for its clients. Piper maintained a fiduciary account to hold the assets of "various trust and other fiduciary accounts" (the "Fiduciary Account").[1] The assets in the Fiduciary Account were administered by Piper's trust department.

On December 22, 1989, Piper created a series of trust funds which resembled mutual funds, each with a different investment strategy (collectively the "Investment Funds"). The Investment Funds were subject to the provisions of a common trust agreement (the "Common Trust").[2] The Common Trust designated Piper as trustee of all assets deposited in the Investment Funds. Funds of the various Investment Funds were commingled in the Fiduciary Account.

On October 1, 1990, Piper entered into an Investment Services Agreement with Debtor, whereby in exchange for a fee, Debtor agreed to render investment advice and to help Piper administer the assets Piper deposited in the Denman Fund. On October 22, 1990, the Common Trust was amended to include the Denman Fund as one of the Investment Funds.[3] As with the other Investment Funds, assets of the Denman Fund were commingled in the Fiduciary Account.

On October 22, 1990, Piper and Florida entered into the Trust Agreement. Under the Trust Agreement, Piper agreed to act as trustee and administer the Florida Assets. The Trust Agreement directed Piper to invest the Florida Assets in the Denman Fund.

In accordance with the Trust Agreement, Piper deposited the Florida Assets in the Fiduciary Account, and Florida instructed Piper to invest the Florida Assets in the Denman Fund. The Florida Assets constituted the only asset of the Denman Fund.

While the Florida Assets were invested in the Denman Fund, Debtor made four transfers[4] to the Fiduciary Account.[5] It is not clear from the record why these transfers were made.

On December 12, 1991, Florida directed Piper to liquidate its investment in the Denman Fund[6] and reinvest the Florida Assets in another Investment Fund.[7]

1. On May 1, 1989, Piper entered into a Depository Custody Agreement with Northern Trust Company of Chicago ("Northern Bank"). Northern Bank agreed to hold the assets from Piper's various trust agreements in account number 17–83608.

2. The Common Trust was actually called the common/collective investment funds plan and trust.

3. Piper does not explain how Debtor was hired to administer the Denman Fund before the Denman Fund was even a part of the Common Trust. Piper also does not explain whether the Denman Fund existed prior to the time it was incorporated into the common trust, or whether Piper merely anticipated that it would create the Denman Fund.

4. On November 15, 1990, Debtor transferred $13,800. On March 11, 1991, Debtor trans-

ferred $31,422.66. On June 7, 1991, Debtor transferred $209,375. On July 3, 1991, Debtor transferred $6,250.

5. Debtor transferred the funds from its capital account at REFCO Capital Corp.

6. The Denman Fund had been renamed on November 9, 1990 and was called the ITM Commingled U.S. Treasury Fund at the time Florida directed this transfer.

7. Florida directed Piper to transfer the Trust Assets to the Piper Intermediate Maturity Government Commingled Bond Fund (the "IMG Fund"). The IMG Fund was also managed in accordance with the provisions of the Common Trust.

On March 12, 1992, Debtor filed a chapter 7 petition. By court order entered March 24, 1992, Durkin was appointed chapter 7 Trustee of Debtor's estate. On July 29, 1992, Florida terminated the Trust Agreement, and Piper returned the Florida Assets to Florida.[8]

On March 30, 1995, Durkin filed the Complaint pursuant to Code §§ 544[9] and 548[10] and California Civil Code ("Cal.Civ.Code") § 3439 *et seq.*[11] In the Complaint, Durkin asserts that he can recover the Transferred Assets from Piper because under Code § 550(a)(1)[12] Piper is the "initial transferee."

In the Motion, filed on May 22, 1995, Piper argues that the Complaint should be dismissed under Federal Rules of Civil Procedure ("FRCP") 12(b)(6), because Durkin is suing Piper in its *corporate* capacity rather than its capacity as *trustee* of the Fiduciary Account. Piper contends that this is improper because, under common law trust principles, Durkin can only recover from Piper in its capacity as trustee and then only from the trust corpus.

In the alternative, Piper requests summary judgment, because Durkin cannot as a matter of law establish under § 550(a)(1) that Piper was the initial transferee of the Transferred Assets or the entity for whose benefit the transfers were made.[13]

In his opposition to the Motion, Durkin states that he is properly suing Piper in its corporate capacity and that Piper exercised

---

**8.** Florida directed Piper to liquidate Florida's investment in the IMG Fund.

**9.** Section 544 states:

Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

. . . .

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544 (1995).

**10.** Section 548 provides:

Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the

date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(a) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(b)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

. . . .

11 U.S.C. § 548 (1995).

**11.** Cal.Civ.Code § 3439 deals with fraudulent instruments and transfers. Cal.Civ.Code § 3439 (West 1995).

**12.** Section 550(a)(1) states:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

11 U.S.C. § 550(a)(1) (1995).

**13.** Piper specifically reserves the right to address Durkin's causes of action under §§ 544 and 548 at a later time, if necessary.

absolute control over the Transferred Assets.[14]

I held a hearing on the Motion on July 5, 1995. At that hearing, I denied Piper's FRCP 12(b)(6) motion, because Piper cited no legal authority in support of its contention that Durkin could only sue Piper in its capacity as trustee. I took Piper's alternative request for summary judgment under submission on the issue of whether Piper was an initial transferee.

## DISCUSSION

### I. The Standard for Summary Judgment.

■ The party moving for summary judgment has the burden to show the absence of any genuine issue of material fact. *Weinberger v. Hynson, Westcott and Dunning, Inc.,* 412 U.S. 609, 622, 93 S.Ct. 2469, 2479, 37 L.Ed.2d 207 (1973).[15] In a summary judgment proceeding, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec., Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. Summary judgment is appropriate where it is clear what the truth is and that there really are no issues of fact to try. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 468, 82 S.Ct. 486, 488–89, 7 L.Ed.2d 458 (1962).

### II. An Initial Transferee within the Meaning of § 550(a)(1) must have Dominion or Control over the Transferred Assets.

■ Pursuant to § 550(a)(1), a trustee may recover a fraudulent transfer from "(1)

the initial transferee of such transfer or the entity for whose benefit such transfer was made...." 11 U.S.C. § 550(a)(1) (1995). The Code does not define the term "initial transferee," and no legislative history helps define the term.

In *Danning v. Miller (In re Bullion Reserve of North America),* 922 F.2d 544 (9th Cir.1991), the court adopted the Seventh Circuit's dominion or control test:

[W]e think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the 'initial transferee;' [sic] the agent may be disregarded.

*Id.* at 548 (quoting *Bonded Fin. Servs. v. European Am. Bank,* 838 F.2d 890, 893 (7th Cir.1988) (emphasis omitted)). In another proceeding, the Bankruptcy Appellate Panel found dominion or control when a party has the right to use the transferred assets "for his personal benefit in accordance with his *sole* wishes." *McCarty v. James Enterprises, Inc. (In re Presidential Corp.),* 180 B.R. 233, 238 (Bankr.9th Cir.1995) (emphasis added). In order for the Complaint to withstand a summary judgment motion, Piper must have had dominion and control over the Transferred Assets.

### III. Piper did not Exercise Dominion and Control over the Transferred Assets.

■ Debtor contends that Piper had complete dominion over all assets in the Fiduciary Account including the Transferred Assets. As evidence, Durkin points to the language of section 4.5(k) of the Common Trust which states:

[Piper] shall have in respect of any and all securities or property at any time received or held for any Fund ... the following powers and authority ... (k) To do all

---

14. In his opposition, Durkin concedes that he has no support for his allegation that Piper is the entity for whose benefit the transfers were made and, therefore, that issue need not be addressed.

15. FRCP 56 is made applicable to bankruptcy adversary proceedings by Federal Rules of Bankruptcy Procedure 7056 ("FRBP"). FRCP 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.
Fed.R.Civ.P. 56.

acts, take all such proceedings and exercise all such rights and privileges whether herein specifically referred to or not, with relation to any property or securities held hereinunder in the Fund, as could be taken and/or exercised by the absolute owner thereof.

Pl.'s Mem. Opp'n Summ.J. at 3.

Piper argues that its control as "absolute owner" is illusory. According to Piper, it was precluded from using the funds in the Fiduciary Account for its own purposes, because it was a trustee and fiduciary under the Common Trust.

Whether Piper had dominion or control over the Transferred Assets is the key issue in determining the Motion. The evidence shows that Piper had no actual dominion or control, as defined by the Ninth Circuit in *Bullion Reserve*, over assets in the Investment Funds, including the Florida Assets. Piper did not "have the right to put money to [it's] own purposes." *Bullion Reserve*, 922 F.2d at 548. Instead, Piper was required to invest the Florida Assets as Florida directed. Furthermore, Florida was free to terminate the Trust Agreement at will.[16]

In its memorandum in opposition to Piper's motion for summary judgment, Debtor cites several cases for the proposition that a trustee of a fiduciary account exercises enough dominion and control to be considered an initial transferee.[17] However, Debtor's reliance on these cases in this instance is misplaced. No evidence has been presented that Piper misappropriated the Transferred Assets, the funds in the Fiduciary Account, or the Investment Funds. If Piper had engaged in such activity, it may have demonstrated the required dominion and control to be considered an initial transferee.

Based on the evidence before me, Piper cannot be considered an initial transferee, and Piper's motion for summary judgment is granted.

## CONCLUSION

Piper did not have dominion or control over the Transferred Assets; therefore, Piper is not an initial transferee under § 550(a)(1). Accordingly, the Motion is granted.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This Memorandum Opinion shall constitute my findings of fact and conclusions of law.

## ORDER GRANTING MOTION

In accordance with my findings of fact and conclusions of law set forth in my memorandum opinion of this date, it is

ORDERED that Piper Trust Company did not have dominion or control over the Transferred Assets; therefore, Piper is not an initial transferee under § 550(a)(1). Accordingly, the Motion is granted.

---

16. This does not mean that a trustee could never have sufficient dominion or control over trust assets to cause the trustee to be an initial transferee. Based on the record in this case, Piper was merely a financial intermediary. Piper executed the investment strategy chosen by its clients, such as Florida. Debtor has failed to convince this court that Piper was anything more than a mere conduit for its investors, acting within the framework of its fiduciary obligations.

17. Pl.'s Mem.Opp'n Summ.J. at 8. Debtor cites *In re Concord Senior Housing Foundation*, 94 B.R. 180 (Bankr.C.D.Cal.1988) (when fiduciary misappropriated funds for his own benefit, he became a "transferee"); *In re Auto–Pak, Inc.*, 73 B.R. 52 (D.D.C.1987) (debtor's president found to be transferee because he caused debtor's check to be converted to cashiers check and used money for his own benefit); *In re Jorges Carpet Mills*, 50 B.R. 84 (Bankr.E.D.Tenn.1985) (debtor's chief executive who paid a personal debtor with debtor's funds is a transferee).