**In re Karl MOSKOWITZ and Marcia Moskowitz.**

**No. CV 87–3420.**

United States District Court,
E.D. New York.

April 11, 1988.

Macco, Hackeling & Stern, Huntington, N.Y., for debtors.

Kirschenbaum & Kirschenbaum, P.C., Garden City, N.Y., for Chicago Title Ins. Co.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an appeal from a judgment of the Bankruptcy Court granting a motion of the Trustee in bankruptcy that requires the payment of $19,893.97 by Chicago Title Insurance Company to the estate of the debtors. For the reasons that follow, the judgment of the Bankruptcy Court is reversed.

### I.

In November 1984, Karl and Marcia Moskowitz (the "Debtors") filed a petition under Chapter 11 of the Bankruptcy Act. Listed as their main asset was their residence, a home located in Dix Hills, New York (the "Dix Hills home"). According to the petition, the value of the Dix Hills home was $234,000. In August of 1985, the Moskowitzes, as debtors-in-possession of the Dix Hills home, entered into a contract to sell their home for $250,000. This contract of sale was entered into with neither the permission nor knowledge of the Bankruptcy Court.

Shortly after entering into the contract of sale, the prospective purchasers engaged the services of defendant Chicago Title Insurance Company ("Chicago Title" or the "Title Company") to examine the title to the Dix Hills home and to issue a title report. Because the title report revealed certain unsatisfied liens, the purchasers refused to accept title and their lender refused to advance that part of the purchase price to be secured by a purchase money mortgage. In response, Chicago Title agreed to omit the exceptions to title, provided the debtors deposited $40,953.50 to be placed in escrow by the Title Company which they would use, as the debtors' agents, to satisfy the outstanding liens.

After the debtors' lender deposited the amount required with the Title Company, the payments necessary to satisfy the outstanding liens were made. When the liens were satisfied the excess amount of $22,105.33 was returned to the debtors, title to the Dix Hills home was cleared and the sale was closed. As noted above, this entire transaction took place without the knowledge or permission of the Bankruptcy Court. In addition, none of the parties participating in the transaction, with the exception of the debtors, had actual knowledge of the pending bankruptcy.

## II.

After the close of the transfer of the Dix Hills home the Trustee in bankruptcy commenced an action in the bankruptcy court seeking, *inter alia,* to void the sale and obtain the return of certain amounts of money. Although the action named several parties and listed several claims for relief, the only claim that is appealed to this Court is the claim of the Trustee against the Title Company. That claim involved a claim by the Trustee for the return of the money deposited with the Title Company that was used to remove the exceptions to the title to the Dix Hills home. Although the Trustee originally sought in excess of $40,000, he subsequently amended that request to delete the amount that the Title Company returned to the debtors.[1]

Apparently agreeing that no material issues of fact existed, both the Trustee and the Title Company moved for summary judgment. After considering the papers and holding oral argument, the Bankruptcy Court found that the Title Company was a initial transferee of the property of the debtor that was not entitled to any exemption under the Bankruptcy Act. Accordingly, the Bankruptcy Court ordered that judgment be entered in favor of the Trustee. This appeal followed.

## III.

Under 11 U.S.C. § 550 a Trustee in Bankruptcy is empowered to seek the return, for the benefit of the estate, of the debtor's property that has been transferred to an initial transferee. 11 U.S.C. § 550(a). If a party is found to be an initial transferee within the meaning of section 550, the transferred property must be returned to the estate. Unlike a bona fide purchaser of real property, the initial transferee under section 550 does not have available the defense of good faith. *See In re Fabric Buys,* 33 B.R. 334, 336 n. 1 (Bankr.S.D.N.Y.1983). Instead, the inquiry focuses on whether or not the individual or entity from whom the property is sought is an "initial transferee" within the meaning of section 550.

Here, the Trustee argues, and the Bankruptcy Court held, that the Title Company became an initial transferee of the debtor's property when it received money from the debtor's lender to be used to satisfy the liens against the Dix Hills home. The Title Company, on the other hand, portrays itself as a mere "conduit" of funds and argues that section 550 was never intended to reach parties that, like itself, act only as a temporary depository of the debtors' funds. The Title Company also argues, in the alternative, that even if it were found to be an initial transferee, the Bankruptcy Court should have exercised its equitable powers to deny recovery to the Trustee.

In support of its position, the Title Company relies on decisions where Courts have refused to characterize parties facilitating certain commercial transactions or payments as initial transferees. *See, e.g., In re Fabric Buys,* 33 B.R. 334 (Bankr.S.D.N.Y.1983); *see also Bonded Financial Services v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988); *In re Colombian Coffee,* 75 B.R. 177 (S.D.Fla.1987); *In re Black & Geddes, Inc.,* 59 B.R. 873 (Bankr.S.D.N.Y.1986); *In re Bridges Enterprises,* 62 B.R. 300 (Bankr.S.D.Ohio 1986).

In the leading case of *Fabric Buys,* the Bankruptcy Court for the Southern District of New York refused to find that a law firm was an initial transferee within the meaning of section 550. There, the firm placed the debtor's funds in its escrow account for later payment in settlement of a lawsuit. Noting that the purpose of section 550 was to preclude "multiple transfers or convoluted business transactions from frustrating the recovery of avoidable transfers," the Court held that such considerations did not apply to the case of the law firm. *Fabric Buys,* 33 B.R. at 337.

---

1. The Trustee also appears to have requested that the title insurance premium be turned over to the estate. Since the premium was paid by the purchasers it could not constitute property of the debtors. In view of this Court's disposition no further reference to the insurance premium is necessary.

Instead of characterizing the firm as an initial transferee, the *Fabric Buys* Court found that the firm was "a mere conduit of funds" that had no direct dealings with the debtor and the mere fact that the funds in question were "funneled through the escrow account" did not make the law firm an initial transferee. *Accord In re Black & Geddes*, 59 B.R. 873, 875 (Bankr.S.D.N.Y.1986). Similar facts led to the same result in *In re Bridges Enterprises, Inc.*, 62 B.R. 300 (Bankr.S.D.Ohio 1986). There, the Court also refused to characterize a law firm working to effect a settlement as an initial transferee of the debtor's funds and denied the trustee's request for recovery.

In *In re Colombian Coffee Co., Inc.*, 75 B.R. 177 (S.D.Fla.1987), the District Court for the Southern District of Florida affirmed the Bankruptcy Court's holding that refused to find that a bank was an initial transferee within the meaning of Section 550. There, the Court characterized the bank as a "commercial conduit" and concluded that there was "no hint in the legislative history that § 550(a) was intended to make an innocent link in the commercial chain bear the loss of a fraudulent or preferential transfer that has vanished beyond the trustee's reach." *Colombian Coffee*, 75 B.R. at 177–78, quoting *In re Colombian Coffee*, 59 B.R. 643, 645 (Bankr.S.D.Fla.1986).

■ This Court agrees with the concerns expressed by the *Colombian Coffee* Court and chooses to follow the line of reasoning first announced in *Fabric Buys*. Where, as here, an individual or entity does not deal directly with the debtor but acts only as an innocent conduit of funds in a commercial transaction, that party should not be characterized as an initial transferee within the meaning of section 550. *Accord Bonded Financial Services*, 838 F.2d at 893 ("[w]hen A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded"). Thus, the Title Company should not have been characterized as an initial transferee within the meaning of section 550 and should not have

been required to turn over the funds used to satisfy the liens.

■ In the alternative, the Court holds that this was a case where the Bankruptcy Court should have exercised its powers of equity to refuse to allow recovery from the Title Company. As the Court noted in *Fabric Buys*, a "literal application" of section 550 would, in some cases, "allow a Trustee to recover from an innocent party who deserves protection." *Fabric Buys*, 33 B.R. at 337. The Court holds that this is such a case. Here, payments were made without knowledge of the bankruptcy to parties who would have, in any event, been entitled to priority. With the exception of the payment by the purchasers of the insurance premium, the Title Company did not benefit from the transfer and the record does not indicate that the Title Company earned anything from the money for the short period of time that the money was in its possession. The Title Company merely facilitated the non-voidable closing of a sale of real estate to bona fide purchasers.

In sum, the Court holds that the Title Company was not an initial transferee and, in the alternative, concludes this was an appropriate case for exercise of the Bankruptcy Court's equitable discretion to refuse to find that the Title Company was an initial transferee. Accordingly, the judgment of the Bankruptcy Court is reversed.

SO ORDERED.