In re CONCORD SENIOR HOUSING FOUNDATION, Debtor.

Gilbert ROBINSON, Chapter 7 Trustee in Bankruptcy, Plaintiff,

v.

HOME SAVINGS OF AMERICA, Defendant.

Bankruptcy No. LA 86–03643–VZ.
Adv. No. LA 88–00376–VZ.

United States Bankruptcy Court,
C.D. California.

Dec. 12, 1988.

Irving M. Gross, Robinson, Diamont, Brill & Klausner, Century City, Cal., for plaintiff/trustee.

Jeffrey C. Krause, Stutman, Treister & Glatt, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

VINCENT P. ZURZOLO, Bankruptcy Judge.

### I.

### STATEMENT OF FACTS

The parties are in agreement as to all relevant facts.

The debtor, Concord Senior Housing Foundation ("Concord"), filed its voluntary petition under Chapter 11 on March 3, 1986. On July 31, 1986 Concord's bankruptcy case was converted to one under Chapter 7. Gilbert Robinson ("Trustee") was appointed trustee of Concord's estate.

The Concord estate's major asset is an apartment building in Pasadena, California (the "Apartment Building"). Prior to July 31, 1986 Concord had hired Karl Gerwer ("Gerwer"), also doing business as Charter Pacific Management ("CPM"), to manage the Apartment Building. Gerwer's duties were to collect rent and provide other management services for the Apartment Building. After collecting the rent, Gerwer would deposit it into an account identified as "Charter Pacific Management No. 44" at Trans World Bank, for which Gerwer and CPM were the only authorized signatories. Gerwer continued to provide these services after Trustee's appointment.

On September 16, 1986, Gerwer transferred $300,000 of the rental proceeds of the Apartment Building into a Certificate of Deposit account ("CD") at Home Savings. Gerwer did this to maximize the interest return on the rental proceeds. Gerwer's transfer of the $300,000 to Home Savings was authorized by Concord and its counsel, though apparently not by Trustee.

The CD at Home Savings was in the name of Gerwer and CPM, and the only signatories on the CD were Gerwer and CPM. None of the documents used to open the CD indicated that Gerwer was holding the funds in trust or as an agent for Concord. However, the $300,000 check of CPM used to fund the CD did bear the inscription: "Concord Pasadena, Debtor In Possession/LA 86–03643–WL" (Concord's bankruptcy case number).

On four occasions, September 25, 1986, October 6, 1986, November 17, 1986, and February 10, 1987, Gerwer and/or CPM borrowed a total of $290,000 from Home Savings. Each time a loan was made to Gerwer or CPM, it was secured by the CD containing Concord's $300,000. Gerwer

never informed Concord, Trustee, or their respective counsel that he was pledging the CD to secure the loans. Further, the loans were made for Gerwer's or CPM's own use, and in no way benefited Concord, its estate, or Trustee. These transactions all occurred after Trustee was appointed.

On March 24, 1987 Gerwer/CPM defaulted on the loans and the amount owing to Home Savings on that date was $297,246.61. Home Savings seized the pledged CD. Trustee filed the present adversary proceeding against Home Savings on March 8, 1988 seeking to avoid Home Savings' seizure of the CD as an invalid postpetition transfer under Sections 549 and 550 of the United States Bankruptcy Code.

## II.

## SUMMARY OF ARGUMENTS

There is no dispute that the $300,000 used to fund the CD was property of Concord's estate. *See* 11 U.S.C. § 541(a)(6). Also, it is without dispute that a transfer occurred after Concord filed its voluntary petition under Chapter 11 on August 15, 1985. *See* 11 U.S.C. § 549(a)(1).

### A. *Trustee's Arguments*

The Trustee's position is that Gerwer and CPM were the agents of Concord and that as long as either had possession or control of the $300,000, no transfer occurred. Trustee further asserts that the only transfer occurred when Home Savings foreclosed on the CD, thereby making Home Savings an initial transferee under Section 550(a)(1).

### B. *Home Savings' Arguments*

Home Savings responds with three arguments: (1) that a transfer did occur under Section 549 when Gerwer misappropriated the funds. Thus, Home Savings claims that Gerwer was the initial transferee for purposes of Section 550, and that Home Savings was an immediate transferee under Section 550(b)(1) and thus insulated from liability; (2) Home Savings was a "mere conduit" and did not exert control over the funds; and, (3) under equitable

principles, Home Savings should be relieved of liability, even if its seizure of Concord's $300,000 is avoidable under §§ 549 and 550, in light of Gerwer's malfeasance and Trustee's failure to adequately supervise his agent. As I find Home Savings' first argument dispositive, I need not, and do not, address the other two.

## III.

## DISCUSSION

A. *Gerwer Became the Initial Transferee for Purposes of Section 550(a)(1) When He Misappropriated the $300,000 and Pledged it as Collateral for His Personal Loans.*

■ Section 550(a)(1) of the United States Bankruptcy Code provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under sections 544, 545, 547, 548, 549, 553(b), or 724(e) of this title, the trustee may recover ... from

(1) *the initial transferee of such transfer or the entity for whose benefit such transfer was made.* (Emphasis added.)

Further, Section 101(50) defines "transfer" as:

" 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or an interest in property; ...."

In the case of *Bonded Financial Services v. European American Bank* (In re Bonded Financial Services), 838 F.2d 890 (7th Cir.1988), the court dealt with a situation similar to the present case. An agent of numerous business entities withdrew $200,000 from the future bankruptcy debtor's account and transferred the funds to the account of a related corporation. When the debtor filed bankruptcy, its trustee filed an adversary proceeding against the bank under Sections 548 and 550.

The United States Court of Appeals for the Seventh Circuit held the bank was not an initial transferee, reasoning:

Although the Bankruptcy Code does not define "transferee," and there is no legislative history on the point, *we think the minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes.*

*Id.* at 893. (Emphasis added.)

In this proceeding, when Gerwer deposited the $300,000 in Trans World Bank, he did so as the agent of Concord's estate and thus the $300,000 was still held by Concord. Also, when Gerwer funded the CD at Concord's request, the Concord estate still retained sufficient dominion over the $300,000.[1]

The initial transfer of property from Concord's estate occurred when Gerwer used the CD for his own benefit by pledging it to secure his loans from Home Savings. When Gerwer misappropriated the funds, he exercised sufficient control over the CD so as to make him a transferee within the meaning of 11 U.S.C. §§ 101(50) and 550(a).

My conclusion is supported by the decision in *In re Auto–Pak, Inc.*, 73 B.R. 52 (D.D.C.1987). In *Auto Pak*, the debtor's agent deposited a check for $4,215.36 into the debtor's bank account. The agent then drew a cashier's check from the debtor's account and used it to pay the withholding taxes of another corporation. The trustee of the debtor's estate filed a fraudulent conveyance action against the I.R.S. The *Auto Pak* trial court held that the I.R.S. was an initial transferee for purposes of Section 550(a). The district court reversed on appeal and stated at p. 54:

It would defy logic to hold an innocent and mediate party such as the I.R.S. a party to this alleged fraudulent conveyance; in fact, the I.R.S. satisfies all the necessary prerequisites for protection under Section 550(b).

Similar to the I.R.S. in *Auto–Pak, supra,* Home Savings is not an initial transferee. The initial transferee was Gerwer/CPM. The initial transfer occurred when Gerwer pledged the CD for his own personal loans

for no consideration and without Trustee's consent.

**B. *Home Savings Was a Subsequent Transferee Protected From Liability Under Section 550(b)(1)***

Section 550(b)(1) of the United States Bankruptcy Code provides in relevant part:

(b) The trustee may not recover under section (a)(2) of this section from—

(1) *a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.* (Emphasis added.)

The parties have stipulated that Home Savings gave value in consideration for its security interest in the CD. What is in dispute is whether Home Savings received its security interest in the CD "in good faith, and without knowledge of the voidability of the transfer avoided."

The *Bonded Financial* court stated:

[V]enerable authority has it that the recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate.

*Bonded Financial* 838 F.2d at 897–898. *See also, In re Auto–Pak, Inc., supra; In re McCauley,* 814 F.2d 1350 (9th Cir.1987); *In re Nevada Implement Co.,* 22 B.R. 105 (Bankr.W.D.Mo.1982).

Thus a transferee acts in good faith if it had no facts before it that would cause a reasonable person to investigate whether the transfer would be avoidable. Within the context of a Section 549 proceeding, I conclude that if the subsequent transferee knew, or if a reasonable person would suspect, that the initial transfer was an unauthorized one from a bankruptcy estate, then the immediate transferee would not have received the transfer in good faith.

Such facts do not exist here. The only thing that might possibly have caused a

---

1. The transfer of the $300,000 to the CD without Trustee's consent of authority was in and of itself a post-petition transfer of estate assets that may

have been invalid under section 549. However, neither party addressed this issue, and it has no effect on my decision.

reasonable person to suspect that an unauthorized post-petition transfer had occurred was the inscription of the words "debtor in possession" and Concord's bankruptcy case number on the $300,000 check from Trans World Bank. However, the Home Savings' employees who assisted Gerwer in opening the CD testified by declaration that they did not realize the significance of the bankruptcy case number, nor did they discuss this with Gerwer. Further, and perhaps more pertinent, the loan and security documents submitted by Gerwer to Home Savings made no reference to Concord's bankruptcy case.

The other relevant facts that support my conclusion that Home Savings acted in good faith are: (1) Home Savings is not a qualified depository institution approved by the U.S. Trustee of the Central District of California to maintain debtor-in-possession accounts. Therefore, it is unlikely that Home Savings' employees would attach any significance to a bankruptcy case number or to the words "debtor in possession" printed on a check; and (2) Gerwer and CPM were the only signatories on the account at Trans World Bank. Thus Home Savings received no clue that Concord had any interest in the $300,000.

## IV.

## CONCLUSION

This memorandum constitutes findings of fact and conclusions of law within the meaning of Bankruptcy Rule 7052. Home Savings shall lodge a proposed judgment consistent with this memorandum.