**In re FIRST SECURITY MORTGAGE COMPANY, Debtor.**

**Patrick J. MALLOY, III, Trustee, Plaintiff–Appellant,**

**v.**

**CITIZENS BANK OF SAPULPA, Defendant–Appellee.**

**No. 93–5268.**

United States Court of Appeals, Tenth Circuit.

Aug. 15, 1994.

Patrick J. Malloy III, of Malloy & Malloy, Inc., Tulsa, OK, for plaintiff-appellant.

Stephen B. Riley and M.D. Bedingfield, of Riggs, Abney, Neal & Turpen, Tulsa, OK, for defendant-appellee.

Before TACHA and EBEL, Circuit Judges, and ROGERS,* District Judge.

ROGERS, District Judge.

This appeal arises from the district court's affirmance of the bankruptcy court's judgment in an adversary proceeding in the underlying bankruptcy.[1] Plaintiff was appointed trustee in the Chapter 7 bankruptcy proceeding and, in that capacity, brought an adversary proceeding seeking to recoup monies conveyed in an allegedly fraudulent transfer. The bankruptcy court found that defendant was not the initial transferee of the funds within the meaning of 11 U.S.C. § 550 and entered judgment in favor of defendant. The district court affirmed the judgment of the bankruptcy court.

■ On May 19, 1988, Gary Hobbs opened a business checking account with defendant bank styled "Gary B. Hobbs, Attorney at Law, Trust Account." As the only signatory on the account, Mr. Hobbs exercised complete discretion regarding deposits to and disbursements from the account, and he was entitled to possession of all account funds upon demand. Deposit slips, wire transfer notices, and receipts indicate that funds derived from First Security Mortgage Co. were deposited in Mr. Hobbs' trust account. Within a year of those various deposits, First Security filed for what ultimately became a Chapter 7 bankruptcy. The trustee then instituted an adversary proceeding in the bankruptcy court to recover $59,348.21, which he claims was fraudulently transferred[2] and, therefore, recoverable from defendant as the initial transferee.[3] The sole issue on appeal is whether the defendant bank was the initial transferee, within the meaning of § 550, of the funds derived from the debtor. We review de novo the district court's affirmance of the bankruptcy court's ruling on this legal question. *See Clark v. Security Pac. Business Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 241 (10th Cir. 1993).

■ The Bankruptcy Code does not define "initial transferee," and this court has never addressed the issue. Other courts have followed the lead of the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir.1988), and have adopted a dominion or control test to determine who is an initial transferee. *See Security First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 140 (5th Cir.1993) (collecting cases). The *Bonded* approach is that "the minimum require-

---

* Honorable Richard D. Rogers, United State District Judge for the District of Kansas, sitting in designation.

1. The parties to this appeal have not requested oral argument and, after examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. 11 U.S.C. § 548(a)(2) provides:
    (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    .    .    .    .    .

    (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
    (B)(i) was insolvent on the date that such transfer was made or such obligation was in-

curred, or became insolvent as a result of such transfer or obligation;
    (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
    (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

3. 11 U.S.C. § 550 provides in relevant part:

    (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.

ment of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." 838 F.2d at 893.

That case involved a situation where the debtor, Bonded Financial Services, sent a check to a bank with written instructions directing the bank to deposit the check into a Mr. Ryan's account. Some ten days later, Mr. Ryan instructed the bank to debit his account in the amount of the previously deposited check to reduce a loan he had with the bank. The court held that, even though the deposit amount was eventually transferred to the bank by Mr. Ryan in partial satisfaction of a debt, the bank had no dominion over the money until Mr. Ryan instructed the bank to debit his account to reduce the loan. *Id.* at 894. The court pointed out that until he directed the bank to debit his account and apply the money to his debt, "so far as the Bank was concerned, Ryan was free to invest the [money] in lottery tickets or uranium stocks." *Id.*

We find the reasoning of the *Bonded* court to be persuasive in deciding the case before us. Upon specific direction, the bank deposited the money into Mr. Hobbs' business trust checking account.[4] The bank was obligated to make the funds available to Mr. Hobbs upon demand and, therefore, it acted only as a financial intermediary. *See id.* at 893.[5] The bank had no business relationship with the debtor and, as was the case in *Bonded,* the bank held the funds it received "only for the purpose of fulfilling an instruction to make the funds available to someone else." *Id.* Accordingly, we AFFIRM.

---

4. We note that we are presented with an even clearer cut case than the *Bonded* court considered. Here, the funds in question were never transferred to the bank to satisfy an indebtedness. Rather the funds were eventually dispersed by Mr. Hobbs to third parties to pay debts unrelated to the bank. Appellant's App. at 4.

5. Plaintiff's reliance on the fundamental banking principle that money deposited in a bank account becomes property of the bank, offset by a debt to the account holder, is misplaced. That legal concept does nothing to aid his argument regarding identity of the initial transferee.